# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| **VIRGINIA GALAVIZ** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. SA-08-CA-305** |
| | § | |
| **POST-NEWSWEEK** | § | |
| **STATIONS, SAN ANTONIO,** | § | |
| **INC., et al.** | § | |
| | § | |
| **Defendants** | § | |

## Order

On this date the Court considered Defendants' motion for summary judgment (docket no. 73) and Plaintiff's motion to strike (docket no. 75). The Court GRANTS the motion for summary judgment and DISMISSES as moot the motion to strike. Judgment in favor of Defendants shall issue separately according to Rule 58. Defendants are awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the Judgment.

## Background

In the live complaint, Plaintiff alleges that she was employed by Defendants as a television police beat field reporter from March 2001 until

Defendants terminated her employment on August 1, 2007.[1]  Most recently, Plaintiff alleges that she and the Defendants entered into a contract on February 28, 2007 that provided for her continued employment with Defendants until March 11, 2010.[2]  Plaintiff alleges that on July 26, 2007, police responded to the scene of an incident between her and her fiancé.[3]  The police arrested both individuals and charged Plaintiff with assault.[4]  On August 1, 2007, Defendants terminated Plaintiff.[5]

Plaintiff alleges that Defendants' conduct was discriminatory against her gender because similarly situated male employees had previously been arrested and/or convicted for assault, indecency with a child, driving while intoxicated, and marijuana possession, but were not terminated.[6]  Plaintiff thus asserts disparate impact and disparate treatment causes of action under Title VII, 42 U.S.C. § 2000e.[7]  Plaintiff further asserts causes of action for breach of her employment contract, intentional infliction of emotional distress, libel, slander, negligence, and negligent hiring, supervision, training and retention.[8]

On January 7, 2009, the Court entered an Order dismissing Plaintiff's

---

[1] Docket no. 5 ¶ 13.

[2] *Id.* ¶ 15.

[3] *Id.* ¶¶ 16, 25.

[4] *Id.*

[5] *Id.* ¶ 17.

[6] *Id.* ¶¶ 18, 21, 23-24, 27-32.

[7] *Id.* ¶¶ 29-32.

[8] *Id.* ¶¶ 34-52.

disparate impact claim.[9]  On May 7, 2009, the Court granted Plaintiff's unopposed motion to dismiss the libel, slander, negligent hiring, supervision, training and retention, and negligence claims, and Plaintiff's unopposed motion to dismiss Defendants Washington Post Company and Post Newsweek Stations, Inc.[10]  The remaining Defendants in this action, Post Newsweek Stations, San Antonio, Inc., Post Newsweek Stations, San Antonio GP, and Post-Newsweek Stations, San Antonio LP ("Defendants" or "KSAT"), move the Court to grant summary judgment in their favor on the remaining claims – disparate treatment under Title VII, breach of employment contract, and intentional infliction of emotional distress.[11]

## Standard of Review

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact.  *Celotex Corp.  v. Catrett*, 477 U.S. 317, 325 (1986).  To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense.  *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert.*

---

[9] Docket no. 22.

[10] Docket nos. 62, 63.

[11] Docket no. 73.

*denied*, 510 U.S. 859 (1993).  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).

## Analysis

### A.  Plaintiff's Title VII Gender Discrimination Claim

#### 1.  Direct Evidence

Plaintiff alleges that Defendants terminated her employment due to her gender, in violation of Title VII.  Title VII makes it unlawful for an employer to discharge an employee because of her sex.  *See* 42 U.S.C. § 2000e.  Gender

discrimination can be shown either by direct evidence or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Plaintiff did not present any direct evidence of discriminatory intent or argue that her claim is based on direct evidence. Rather, the undisputed evidence and Plaintiff's pleadings indicate that Plaintiff bases her claim on her belief that other male employees of KSAT were involved in and/or arrested for similar incidents but not terminated.[12]

## 2.    Circumstantial Evidence

When there is no evidence of discrimination, Plaintiff must prove her gender discrimination claim through circumstantial evidence, using the burden-shifting framework established by *McDonnell Douglas Corp.*, 411 U.S. 792, 802 (1973). *See also Nasti v. CIBA Specialty Chems.*, 492 F.3d 589, 593 (5th Cir. 2007).

> Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of sex discrimination. The employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. The employer is not required to convince the Court that it was actually motivated by this reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff. Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the *McDonnell Douglas* framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination. A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's

---

[12] *See* Tr. of Deposition of Virginia Galaviz (docket no. 73, Exh. B) at 231-32; Plaintiff's First Amended Complaint (docket no. 5) ¶¶ 27-28.

proffered explanation is false or unworthy of credence.

> To establish a prima facie case, [the plaintiff] must demonstrate that (1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably.

*Nasti*, 492 F.3d at 593 (internal citations and quotations omitted).

### a. Replacement

Defendants contend that no genuine issue of material fact exists to suggest that Plaintiff was replaced by a similarly qualified male employee. The undisputed evidence is that Defendants have not, to date, replaced Plaintiff with a "police beat" reporter – male or female.[13] Plaintiff does not address this argument or present evidence that Defendants have hired a male to perform the roles and responsibilities Plaintiff previously held. The uncontroverted evidence therefore shows that Plaintiff was not replaced by a person outside of her protected group. *See, e.g.*, *Salinas v. AT&T Corp.*, 314 F. App'x 696, 698 (5th Cir. 2009) ("Since Salinas was not replaced by AT&T, under the fourth element he must demonstrate that AT&T gave preferential treatment to a non-Hispanic or female employee under 'nearly identical circumstances.'").

### b. Disparate Treatment

The Court thus must analyze whether Plaintiff established that other

---

[13] *See* Affidavit of James Phillip Boyle (docket no. 73, Exh. D) at 2 (News Director and Vice-President of Defendant Post-Newsweek Stations, San Antoinio, Inc., stating "I hired Virginia Galaviz to be the KSAT police beat reporter. This was a unique position and she was the only reporter who held this title. . . . KSAT has not replaced Ms. Galaviz.").

similarly-situated employees were treated more favorably. Plaintiff must show that (1) an employee outside of her protected class was similarly situated; and (2) this employee was treated differently under circumstances "nearly identical" to hers. *Wheeler v. BL Dev. Cor.*, 415 F.3d 399, 406 (5th Cir.2005); *see also Berquist v. Washington Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) ("In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated."). "When assessing whether employees are similarly situated, courts consider whether the employees were employed in the same job position, whether the employees had different job responsibilities, and whether the same supervisor was involved in the decision making." *Puente v. Potter*, Civil Action No. SA-05-CA-747-XR, 2007 WL 869584, at *6 (W.D. Tex. March 20, 2007) (citing *Williams v. Gonzales*, No. 1:04-CV-342, 2005 U.S. Dist. LEXIS 38838, at *35-36 (E.D. Tex. Dec. 14, 2005); *Coleman v. Exxon Chem. Corp.*, 162 F. Supp. 2d 593, 608 (S.D. Tex. 2001)).

### i. Plaintiff

We first examine the circumstances surrounding Plaintiff's employment and termination. The undisputed summary judgment evidence shows that Plaintiff was hired and supervised by James Boyle to work as an on-air news reporter for KSAT.[14] Specifically, Plaintiff was hired to be KSAT's only designated "police beat" reporter.[15] In that role, Plaintiff was to cover events

---

[14] Plaintiff's Employment Contract (docket no. 73, Exh. A); *id.*, Exh. B at 51-52, 57.

[15] *Id.*, Exh. B at 45-47; Deposition of James Boyle (docket no. 73, Exh. C) at 4..

related to crime, public safety and the law enforcement community in the City of San Antonio.[16] Plaintiff testified that her duties as police beat reporter were "different" than those who worked as general assignments reporters.[17] Plaintiff worked to cultivate sources within the police department and the law enforcement community, directly received tips from police beat sources, and had greater discretion than general assignments reporters in deciding what to cover.[18]

As is the case with all of Defendants' on-air employees, Plaintiff was required to sign an employment contract.[19] The contract specified the terms and conditions of Plaintiff's employment with KSAT and included "Talent Contract Clauses."[20] Importantly, the Talent Contract Clauses contained the following "morals" clause:

8. TERMINATION UNDER CERTAIN CIRCUMSTANCES

(a) If at any time Employee fails to conduct ... herself with due regard to public morals and decency, or if Employee commits any act or becomes involved in any situation or occurrence tending to degrade Employee in the community or which brings Employee into public disrepute, contempt, or scandal, or which materially and adversely affects the reputation or business interests of PNS or the standing of PNS as a broadcast licensee, whether or not information in regard thereto becomes public, PNS shall have the right to terminate the Agreement on twenty-four (24) hours notice to

---

[16] *Id.*, Exh. B at 55-56.

[17] *Id.* at 57.

[18] *Id.* at 56-57.

[19] *Id.* at 47, 50-51; Affidavit of James Boyle (*id.*, Exh. D) at 1.

[20] *See* Plaintiff's' Employment Contracts (*id.*, Exhs. A, E).

Employee.[21]

Plaintiff's employment contract was renewed on two occasions, first on March 16, 2004 and again on February 28, 2007.[22]  Each of Plaintiff's employment contracts was for three-year terms.[23]

Sometime in the fall of 2003, Plaintiff began a romantic relationship with San Antonio Councilman Ron Segovia.[24]  Over time, the relationship became troubled, and in April of 2004, Plaintiff stopped seeing Segovia for a three- or four-week period following an alleged violent outburst by Segovia at his home.[25] Plaintiff nevertheless resumed dating Segovia thereafter.[26]  Plaintiff disclosed the relationship and the related difficulties to Boyle as early as July 19, 2004.[27]

In July of 2004, Plaintiff and Segovia were again involved in a domestic incident at Segovia's residence, resulting in the San Antonio Police being called.[28]  The police report filed by one of the responding officers indicates that, on or about July 10, 2004, Plaintiff threw a hamburger at Segovia, and Segovia responded by throwing an apple at Plaintiff, which hit her and bruised her

---

[21] *Id.*

[22] *Id.*, Exh. E.

[23] *Id.*, Exhs. A, E.

[24] *Id.*, Exh. B at 68.

[25] *Id.* at 69.

[26] *Id.*

[27] Email from Virginia Galaviz to James Boyle, dated July 19, 2004 (*id.*, Exh. F).

[28] *Id.*, Exh. B at 69-70.

back.[29]  Later that day, Segovia and Plaintiff went out to dinner. [30]  Following

dinner, the couple was involved in another argument, during which Segovia

allegedly punched Plaintiff in the face and pointed a gun at Plaintiff.[31]

The altercation received significant press coverage, including at least nine

newspaper articles and press releases.[32]  Plaintiff was frequently identified as

KSAT's police beat reporter in these articles.[33]  At least two articles questioned

KSAT's journalistic ethics in the wake of allegations that Plaintiff was dating

Segovia while she covered news stories about him.[34]  KSAT nevertheless chose

not to take any action with respect to Plaintiff's employment.[35]  Plaintiff testified

that she has no complaints about how KSAT treated her following the incident.[36]

On February 28, 2006, Plaintiff was involved in a second domestic incident

with her then-boyfriend, Nathan Alonzo.[37]  Plaintiff was at Alonzo's apartment

---

[29] *Id.*, Exh. G.  The Court takes notice of the police report submitted as Exhibit G to Defendants' motion for summary judgment not for the truth of the matter asserted therein, but for the existence of the reports and the allegations made therein.  *See* FED. R. EVID. 201.

[30] Docket no. 73, Exh. B at 84; Exh. H at 2.

[31] *Id.*, Exh. B at 84; Exh. G at 2; Exh. H at 2.

[32] *Id.*, Exh. B at 86; Exh. I.  The Court takes judicial notice of the articles submitted as Exhibit I to Defendants' motion for summary judgment, not for the truth of the matters asserted therein, but for their existence and the allegations made therein.  *See* FED. R. EVID. 201.

[33] *Id.*, Exh. I.

[34] *Id.*, Exhs. I-2, I-9.

[35] *Id.*, Exh. B at 94.

[36] *Id.* at 95.

[37] *Id.* at 96-97.

when he arrived home with another woman.[38]  According to the police report filed after the incident, a brief altercation occurred between the parties concerning the nature of the relationships between Mr. Alonzo and the two women.[39]  After the police arrived, Plaintiff left the scene in her own vehicle without further incident.[40]  Shortly thereafter, Boyle received word of the incident, met with her, and expressed his displeasure in Plaintiff's involvement in the situation.[41]  Boyle notified Plaintiff that she could be fired for the incident or if she engaged in future similar conduct.[42]

On July 25, 2007, Plaintiff was involved in a third incident with a new boyfriend named Ronald Aguillen.  According to the police report that was subsequently filed, Plaintiff and Aguillen were involved in a physical altercation at the Cadillac Bar in downtown San Antonio.[43]  Plaintiff left the bar and

---

[38] *Id.* at 96-97.

[39] *Id.*, Exh. J at 2.

[40] *Id.*

[41] *Id.*, Exh. D; Exh. B at 104.

[42] *Id.*, Exh. D; Exh. B at 104; Deposition of Deborah Barrera (*id.*, Exh. K) at 40, 54. Plaintiff, during her deposition, testified "I do remember [Boyle] saying that because of [the Alonzo incident] you could get fired" and that Boyle may have told her that she could be fired for a similar future incident.  *Id.*, Exh. B at 104.  Plaintiff later changed her testimony via her errata sheet to "I don't remember," claiming that her prior answer was inaccurate.  *See id.*, Exh. B at 157 (errata sheet).  Plaintiff thus neither admits nor denies that Boyle issued such warnings.  Boyle testified that he did make such statements.  In light of Boyle's statements, Plaintiff's inability to recall the conversation is insufficient to create a fact issue to overcome summary judgment.  *See Dickey v. Baptist Mem'l Hosp.*, 146 F.3d 262, 266 n.1 (5th Cir. 1998) ("The mere fact that Dr. Washington does not remember the alleged phone conversation, however, is not enough, by itself, to create a genuine issue of material fact. Rule 56 requires that the party opposing summary judgment point to specific evidence that creates a genuine issue of material fact.").

[43] *Id.*, Exh. B at 110; Exh. L.  The Court takes notice of the police report submitted as Exhibit L to Defendants' motion for summary judgment, not for the truth of the matters

returned home, where she discovered that she had a black eye.[44]  Plaintiff then

drove to Aguillen's sister's home because she "wanted [Aguillen] to see the black

eye."[45]  Another confrontation occurred at the residence, the police were called,

and Plaintiff and Aguillen were arrested for assault and family violence.[46]

Plaintiff spent the night in a holding cell in the magistrate's office and was

released the following day.[47]

The Aguillen incident also received significant media coverage.[48]

Photographs and at least one video recording of Plaintiff being led in handcuffs

to the magistrate's office were publicized.[49]   Boyle and KSAT's business

manager, Debbie Barrera, witnessed the video of Plaintiff's arrest being

broadcasted on local television news programs.[50]  Plaintiff's arrest also became

the subject of internet and newsprint articles, again identifying Plaintiff as a

KSAT television reporter.[51]  Some of the articles chronicled Plaintiff's previous

---

asserted therein, but for the existence of the reports and the allegations made therein.  *See* FED. R. EVID. 201.

[44] Docket no. 73, Exh. B at 109-11.

[45] *Id.* at 111-12.

[46] *Id.* at 114; Exh. L.

[47] *Id.*, Exh. B at 124-27.

[48] *Id.* at 114.

[49] *Id.*

[50] *Id.*, Exh. C at 9; Exh. K at 4, 14.

[51] *Id.*, Exh. M. The Court takes judicial notice of the articles submitted as Exhibit M to Defendants' motion for summary judgment, not for the truth of the matters asserted therein, but for the existence of the articles and the allegations made therein.  *See* FED. R. EVID. 201.

incidents.[52]

Following her release from jail, Plaintiff met with Boyle and Barrera so that Boyle and Barrera could obtain Plaintiff's side of the story and gather further information related to the most recent incident.[53] Plaintiff informed Boyle and Barrera that she was already undergoing counseling.[54] Barrera gave Plaintiff information about a counseling program to which KSAT had previously referred employees for psychiatric and family counseling.[55] No evidence was presented that suggests that Barrera or Boyle suggested that she would retain her employment if she attended counseling.[56] On the following day, Boyle and Barrera again met with Plaintiff.[57] Boyle gave Plaintiff a termination letter and informed Plaintiff that her employment was being terminated due to her violation of the "morals" clause in her employment contract.[58]

## ii.    Plaintiff's Alleged Comparators

Plaintiff identifies four current and former male KSAT employees who were arrested and/or involved in criminal conduct and not terminated – Maury Vasquez, Erik Barajas, Robert Flowers, and Abel Alejandro.[59]

---

[52] Docket no. 73, Exh. M.

[53] *Id.*, Exh. B at 127; Exh. C at 11-12.

[54] Docket no. 74, Exh. B at 16; Exh. D at 15..

[55] *Id.*, Exh. D at 15-16.

[56] *See id.,* Exh. B at 16, Exh. D at 15-16.

[57] Docket no. 72, Exh. B at 150; Exh. C at 21.

[58] *Id.*, Exh. B at 150, 153; Termination Letter (*id.*, Exh. N).

[59] *Id.*, Exh. B at 210-11, 235-36.

<u>Maury Vasquez</u>

The uncontroverted summary judgment evidence indicates that Maury Vasquez was employed by KSAT as a general assignments reporter.[60] As such, Vasquez was required to sign an employment agreement like the one that governed Galaviz' employment and that included the "morals" clause.[61] Vasquez was supervised by Boyle.[62]

Boyle testified that Vasquez was arrested for a domestic incident while he was employed by KSAT, that it was the first incident Boyle knew about while Vasquez was employed by KSAT, and that he warned Vasquez that a similar infraction could result in his termination.[63] Boyle opined that Vasquez' arrest received "minimal media coverage," and that Vasquez was not involved in any other incidents during his employment at KSAT.[64] KSAT's vice president and General Manager, James Joslyn, also testified that Vasquez' arrest received press coverage and admitted that the coverage "defamed" KSAT, but opined that the coverage of Vasquez' sole incident damaged KSAT less than the coverage of Galaviz' multiple incidents.[65]

Plaintiff testified during her deposition that Maury Vasquez was charged

---

[60] *Id.*, Exh. D at 2.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at 2-3.

[65] Docket no. 74, Exh. A at 6.

with possession of marijuana.[66]  Plaintiff says that she learned this through a background check of Vasquez.[67]  However, there is no evidence that KSAT was aware of the charge or that the charge occurred while Vasquez was employed by KSAT.[68]  Mere evidence of the fact of the charge, by itself, cannot support Plaintiff's assertion that she was treated less favorably than Vasquez because no evidence was presented to indicate that KSAT actually knew about the charge but nevertheless retained him.

Erik Barajas

The uncontroverted summary judgment evidence indicates that Erik Barajas was employed by KSAT as a weekend news anchor.[69]  Like Vasquez, Barajas was required to sign an employment agreement like the one that governed Galaviz' employment and that included the "morals" clause.[70]  Vasquez was likewise supervised by Boyle.[71]  Boyle testified that Barajas was arrested for driving under the influence of alcohol.[72]  The incident made the news, and Boyle testified that the publicity brought disrepute to KSAT's reputation.[73]  To Boyle's

---

[66] Docket no. 73, Exh. B at 236.

[67] *Id.*

[68] In fact, Boyle indicated that he was unaware of any incidents Vasquez was involved in while he was employed at KSAT.  *Id.*, Exh. D at 3.

[69] *Id.* at 2.

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] Docket no. 74, Exh. D at 19-20.

knowledge, this was the first and only incident of the type involving Barajas while Barajas was employed at KSAT.[74] As with Vasquez, Boyle warned Barajas that further instances of similar conduct could result in termination, and like Vasquez, Boyle was unaware of any further incidents involving Barajas during Barajas' employment at KSAT.[75] Although KSAT decided to retain Barajas, Barrera and Boyle conditioned his continued employment on Barajas' attendance in a counseling program.[76]

Robert Flowers

The undisputed summary judgment evidence indicates that Robert Flowers worked in production, did not have an employment contract, was not on-air talent, and was not supervised by Jim Boyle, and that Boyle did not participate in employment decisions regarding Flowers.[77] Plaintiff suggested that Flowers, while employed by KSAT, was arrested.[78] The parties have not directed the Court to evidence that explains what Flowers was arrested for. His immediate supervisor, Scott Laird, reviewed the incident with Debbie Barrera and James Joslyn, and decided to retain him.[79] KSAT recommended that Flowers attend counseling. Barrera could not recall whether Flowers' continued

---

[74] Docket no. 73, Exh. D at 2.

[75] *Id.*

[76] Docket no. 74, Exh. B at 9-10.

[77] Docket no. 73, Exh. C at 21, Exh. K at 28, 32-34, Exh. D.

[78] *Id.*, Exh. B at 210-11.

[79] Docket no. 74, Exh. A at 1, 8-9; Exh. B at 7-9.

employment was conditioned upon his attending counseling, but she testified that she believed Flowers attended counseling voluntarily.[80]

Abel Alejandro

Like Flowers, the undisputed summary judgment evidence indicates that Abel Alejandro worked in production, did not have an employment contract, was not on-air talent, and was not supervised by Jim Boyle, and that Boyle did not participate in employment decisions regarding Alejandro.[81]  Plaintiff makes fairly vague allegations that Abel Alejandro was involved in some indecent act.[82]  Plaintiff stated that Alejandro told her about the incident, but she could not remember details about the conversation and did not know if the incident occurred while Flowers was employed by KSAT.[83]

### iii.  Plaintiff's Comparators were not Similarly Situated

Plaintiff has failed to identify a similarly situated male employee who received favorable treatment.  Most significantly, Plaintiff was involved in multiple domestic incidents that were either of a public nature or involved the police, while, to KSAT's knowledge, each of the alleged comparators was involved in one incident during his respective employment.  KSAT's decision-makers identified this distinction as an important factor in their decision to terminate

---

[80] *Id.*, Exh. B at 9.

[81] Docket no. 73, Exh. B at 235-36, Exh. C at 21, Exh. K at 28, 32-34, Exh. D.

[82] *See id.*, Exh. B at 235-36.

[83] *Id.*

Plaintiff's employment.[84]  In fact, just like her alleged comparators, Plaintiff's employment was not terminated after her first incident.

Further, Flowers and Alejandro each worked in production, were not on-air talent, were not in the public eye, did not have employment contracts containing the morals clause, were not supervised by Boyle and, similarly, Boyle did not participate in decisions regarding the decision to retain the individuals. Flowers and Alejandro therefore cannot be described as similarly situated to Plaintiff. *See, e.g.*, *Puente*, 2007 WL 869584, at *6 ("When assessing whether employees are similarly situated, courts consider whether the employees were employed in the same job position, whether the employees had different job responsibilities, and whether the same supervisor was involved in the decision making."); *Lee v. Exxon Mobil Corp.*, Civil Action No. H-07-2800, 2008 WL 5158181, at *4 (S.D. Tex. Dec. 9, 2008) ("Moreover, the 'alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision [ ],' and the comparator employees' position in organization- e.g., job title, duties, supervisor-should be roughly the same.") (quoting *Perez v. Tex. Dept. of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004)).

Further, none of Plaintiff's purported comparators served in a specialized, on-air role as police beat reporter.  Although Barajas and Vasquez were on-air talent and were employed pursuant to an employment contract that contained

---

[84] Docket no. 73, Exh. C at 25; Exh. K at 49-52.

a morals clause, Boyle remarked that the irony surrounding publicity of the arrest of KSAT's police beat reporter reflected particularly poorly on KSAT.[85]

Additionally, prior to her final incident, Plaintiff had been warned that a further similar incident could result in her termination. While similar admonishments were made to her alleged comparators, KSAT is unaware of any subsequent incidents involving the purported comparators. *See Gallow v Autozone, Inc.*, 952 F. Supp. 441, 446 (S.D. Tex. 1996) ("Nor is there any evidence that, like Plaintiff, Hilton received a warning concerning her behavior.").

Finally, the extent and nature of the media coverage Plaintiff received further distinguishes her. The Segovia and Aguillen incidents received, in Boyle's words, a "fire storm of coverage."[86] Although Barajas and Vasquez received coverage, Boyle believed such coverage was minimal.[87]

For all of the foregoing reasons, Plaintiff fails to present a genuine issue of material fact as to whether similarly situated employees were treated more favorably than Plaintiff. Summary judgment is therefore granted in favor of Defendants on Plaintiff's gender discrimination claim.

## B.    Plaintiff's Breach of Contract Claim

In the amended complaint, Plaintiff alleges that "Defendants defaulted and breached the employment contract by terminating Plaintiff and failing to

---

[85] *Id.*, Exh. C at 30.

[86] *Id.*, Exh. C at 22.

[87] *Id.*, Exh. C at 18-19, 30, 39; Exh. D.

compensate Plaintiff as set forth in the Employment Contract."[88]  In their summary judgment briefing, the parties focus on two breach-of-contract theories: (1) that grounds did not exist under the morals clause for terminating Plaintiff prior to the expiration of the three-year term of employment, and (2) that Defendants did not provide the required twenty-four hours' notice of termination specified by the morals clause.

## 1.    Grounds for Terminating Plaintiff under Paragraph 8(a)

Plaintiff argues that her termination prior to the expiration of the three-year term of her employment contract constituted a breach of the employment contract.  Texas is an employment at will state.  *Molder v. Southwestern Bell Tel. Co.*, 665 S.W.2d 175, 177 (Tex. App.–Houston [1st Dist.] 1983, writ ref'd n.r.e.).  Thus, when a term of service is left to the discretion of either party, or the term is left indefinite, or terminable by either party, either may end the employment at will without cause.  *Webber v. M.W. Kellog Co.*, 720 S.W.2d 124, 127 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.) (quoting *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888)).  However, in the absence of special circumstances, Texas also follows the rule that a contract of employment for a term, as opposed to "at will," can only be terminated upon a showing of good cause for the discharge.  *Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 578 (Tex. App.–Houston [1st Dist.] 1992, no writ).

Plaintiff was told she was being terminated for violating Paragraph 8(a)

---

[88] Docket no. 5 ¶ 35.

of the Terms and Conditions of her employment contract (the "morals" clause), and all KSAT decision-makers involved in the decision testified that this was, in fact, the reason for her decision.[89] Again, that paragraph provided that KSAT may terminate Plaintiff if, at any time, Plaintiff "fail[ed] to conduct ... herself with due regard to public morals and decency, or if [Plaintiff] commit[ted] any act or [became] involved in any situation or occurrence tending to degrade [Plaintiff] in the community or which [brought Plaintiff] into public disrepute, contempt, or scandal, or which materially and adversely affect[ed] the reputation or business interests of [KSAT] or the standing of [KSAT] as a broadcast licensee...."[90]

As discussed above, the undisputed evidence was that Plaintiff was involved in three incidents involving domestic disputes. At least two incidents received significant publicity in the local media. In news articles about the incidents, Plaintiff was identified as KSAT's police beat reporter. Plaintiff's journalistic ethics were questioned. Video images of Plaintiff being led in handcuffs into the magistrate's office were publicized. The undisputed summary judgment evidence establishes, at a minimum, that Plaintiff was involved in situations or occurrences which brought Plaintiff into public disrepute or scandal. Grounds thus existed for terminating Plaintiff pursuant to the morals clause, and good cause existed for terminating Plaintiff prior to the expiration

---

[89] Docket no. 73, Exh. B at 150-153; Exh. N; Docket no. 74, Exh. A at 4-8; Exh. B at 12-14; Exh. D at 29-36.

[90] Docket no. 73, Exhs A, K.

of the three-year term of the employment contract.

Plaintiff argues without clarification or support that Paragraph 8(a) contains ambiguities. A determination of whether a contract is ambiguous and the interpretation of a contract are questions of law. *Reliant Energy Servs. v. Enron Can. Corp.*, 349 F.3d 816, 821 (5th Cir. 2003). Plaintiff has not attempted to demonstrate actual ambiguity; rather, Plaintiff states in conclusory fashion that the contract was ambiguous. Nevertheless, the Court disagrees that Paragraph 8(a) contains any ambiguities that may alter the conclusion that Plaintiff violated the morals clause.

## 2. Lack of Notice

Paragraph 8(a) permits KSAT to terminate an employee in violation of the morals clause "on twenty-four (24) hours notice to" the employee.[91] Plaintiff's termination letter, dated August 1, 2007, states that Plaintiff's employment was terminated "effective immediately."[92] Plaintiff testified that her termination meeting occurred on August 1, 2007.[93] Plaintiff thus argues that her termination violated Paragraph 8(a)'s requirement that Defendants provide her 24 hours' notice. While the summary judgment evidence suggests Defendants may have failed to comply with this requirement, summary judgment in favor of Defendants is still appropriate.

The essential elements in a suit for breach of contract are: (1) the existence

---

[91] *Id.*, Exhs. A, E.

[92] *Id.*, Exh. N.

[93] *Id.*, Exh. B at 133, 146, 149-50.

of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320, 326 (Tex. App.–Houston [1st Dist.] 1995, no writ). Under Texas law, "when an employment contract requires a certain period of notice, the employment may be cancelled on shorter notice or upon none at all if the employee is paid wages or salary for the specified notice period." *Id.*; *see also Cushman & Wakefield, Inc. v. Fletcher*, 915 S.W.2d 538, 545 (Tex. App.–Dallas 1995, writ denied) (same).

The summary judgment evidence indicates that Plaintiff was payed her salary through August 2, 2007.[94] Therefore, the Plaintiff cannot prove that she suffered damages in the form of lost wages because she was payed through the period for which she was entitled. *See Cushman*, 915 S.W.2d at 545-46 ("C & W could terminate Fletcher for no reason at all if Fletcher was given fourteen days' written notice.... Thus, the actual benefit Fletcher received from the employment contract was a two-week notification before termination.... C & W breached the

---

[94] *Id.*, Exhs. P, Q. KSAT's payroll records indicate that Plaintiff received sick pay for August 2, 2007. *Id.*, Exh. P. KSAT's business manager confirmed this, stating "Virginia Galaviz was paid through August 2, 2007. She was paid her regular salary for July 26 and 27, 2007, even though she did not work those two (2) days. Furthermore, she was granted sick pay for July 30, 2007 through August 2, 2007, as indicated on her final timesheet. Virginia Galaviz was also paid the value of her ninety-six (96) hours of accrued vacation time." *Id.*, Exh. Q. Plaintiff points to a statement Boyle made that Galaviz was not given any "future pay." Docket no. 74, Exh. D at 23. However, given the context of the statement, the statement clearly referred to KSAT's decision not to offer Galaviz any kind of severance package to account for the lengthy term of employment that remained under Galaviz's contract. *See id.* From the context of the conversation, it is not reasonable to infer that Boyle intended to testify that Galaviz was not paid for August 2, 2007. Therefore, no genuine issue of material fact exists on the issue.

employment agreement, and Fletcher was then entitled to the benefit of the bargain, fourteen days' notice.").

In her response brief, Plaintiff states that "Defendants fought [Plaintiff's] attempts to get unemployment benefits."[95] Yet Plaintiff submitted no evidence to support her claim or to suggest that she did not receive benefits through August 2, 2007, as it was her burden to prove. Nor did Plaintiff provide evidence to suggest that any alleged premature termination of benefits damaged her. Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiff's breach of contract claim.

## C.     Plaintiff's Intentional Infliction of Emotional Distress Claim

In her amended complaint, Plaintiff alleges that Defendants intentionally inflicted emotional distress by: (a) intentionally publicizing inaccuracies regarding Plaintiff's arrest and termination and the nature of Plaintiff's previous incidents, and (b) leading Plaintiff to believe that her job was secure prior to terminating her employment.[96]

Under Texas law, the elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999). Regarding

---

[95] Docket no. 74 at 10-11.

[96] Docket no. 5, ¶¶ 38-40.

the second element, the fact that an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress. *Id.* It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Id.* at 215-16 (internal quotations omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 216 (internal quotations omitted). Further, "it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* (internal quotations omitted).

Defendants' actions do not rise to the level of extreme and outrageous conduct. While "[t]ermination of an employee is never pleasant, especially for the employee, .... the mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous." *Id.* at 216 (quoting *Wornick v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993) and *Sw. Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998)).

Further, even if the conduct Plaintiff complains of could constitute extreme

and outrageous conduct, Plaintiff presented no evidence in support of the allegations in the complaint. Namely, Plaintiff presented no evidence to suggest that Defendants intentionally publicized inaccuracies regarding Plaintiff's arrest and termination and the nature of Plaintiff's previous incidents, or led Plaintiff to believe that her job was secure prior to terminating her employment. For the foregoing reasons, summary judgment in favor of Defendants is granted on Plaintiff's claim for intentional infliction of emotional distress.

## D.    Plaintiff's Other Objections

Finally, Plaintiff argues that summary judgment is inappropriate because: (1) Defendants improperly relied on interested witness testimony, and (2) Defendants failed to present evidence by a corporate representative necessary for a proper summary judgment response.

With respect to the first objection, Plaintiff complains that Defendants rely on unspecified interested witnesses. The Court presumes Plaintiff refers to Defendants' reliance upon the testimony of KSAT employees, including Debbie Barrera and Jim Boyle. The Supreme Court instructs that "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). Nevertheless, neither KSAT nor the Court relied upon any interested witnesses as the term is understood in this context. "The definition of an interested witness cannot be

so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee.... [T]o so hold would foreclose the possibility of summary judgment for employers, who almost invariably must rely on testimony of their agents to explain why the disputed action was taken." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002); *see also Wiley v. Am. Elec. Power Serv. Corp.*, 287 F. App'x 335, 339 (5th Cir. 2008) ("[T]he plaintiffs fail to provide any reason why Koeppel is an interested witness other than her status as a decision-maker at AEP. We have previously stated that this is not sufficient to be considered an interested witness."). The testimony of Defendants' employees will therefore not be stricken on this ground.

Regarding Plaintiff's second objection, Plaintiff argues that summary judgment is premature because Barrera, designated as Defendants' corporate representative for certain topics related to human resources, could not answer many questions presented. Plaintiff does not cite to specific testimony in Barrera's deposition which allegedly violated the mandates of Rule 30(b)(6). Further, Plaintiff does not identify how she has been prejudiced by Defendants' alleged failure – specifically, Plaintiff does not identify any information she was not able to obtain or how that information may have changed the summary judgment analysis. Nevertheless, the Court has reviewed Barrera's deposition transcript and concludes that, although Barrera lacked knowledge regarding some issues raised by Plaintiff, Barrera generally was able to discuss the issues

raised by Plaintiff.

Further, this is the first time Plaintiff has lodged this complaint. Plaintiff never brought the Defendants' alleged failure to the Court's attention via an appropriate discovery motion. Nor did Plaintiff move for a continuance under Rule 56(f). Nor has Plaintiff provided grounds upon which the Court could determine that a continuance under Rule 56(f) is appropriate. *See Joseph v. City of Dallas*, 277 F. App'x 436, 443-44 (5th Cir. 2008) ("[A]t a minimum, a party must show: (1) why he needs additional discovery; and (2) how that discovery would create a fact issue that would defeat summary judgment."). Accordingly, Plaintiff has not convinced the Court that Ms. Barrera's designation as a corporate representative provides grounds for denying summary judgment.

## Conclusion

The Court finds that Plaintiff failed to raise a genuine issue of material fact. Accordingly, Defendants' motion for summary judgment (docket no. 73) is GRANTED. Without deciding the merits of Defendants' motion to strike, the Court considered all evidence submitted by Plaintiff, including the evidence objected to by Defendants, before reaching its decision on the motion for summary judgment. Defendants' motion to strike (docket no. 75) is thus dismissed as moot.

Judgment in favor of Defendants shall issue separately according to Rule 58. Defendants are awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within

fourteen days of the Judgment.

It is so ORDERED.

SIGNED this 13th day of July, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE